CHARLES A. EVERETT *vs.* SAMUEL D. CARLETON, and others.
FRANK GILMAN *vs.* SAME.

Piscataquis. Opinion April 25, 1893.

*Real Action. General Issue. Attachment. Lien. R. S., c. 81, § 59.*

Where the only plea in a real action is the general issue, the question is, which party shows the better title in himself.

Where a party claims title by virtue of an attachment and levy, and the writ contains only the general money count, with no specification of the "nature and amount" of the claim to be proved under it, such attachment is void, and no lien is created thereon.

In this case, the plaintiffs' predecessors in title had obtained title by deed prior to the levy made under such attachment.

The title, therefore, by deed in the plaintiffs' predecessors, and transmitted to the plaintiffs, is a better title than that of the defendants derived under the levy made subsequent to the plaintiffs' title by deed.

ON REPORT.

The case appears in the opinion.

*C. A. Everett* and *Davis and Bailey*, for plaintiffs.

*A. M. Robinson* and *Wilson and Woodard*, for defendants.

FOSTER, J. Real actions, the defendants being the same in both. Each plaintiff claims title to one undivided half part in common of certain wild land in the town of Medford in the county of Piscataquis, estimated at about one thousand acres.

The defendants plead the general issue. The real question, then, is, which party shows the better title in himself.

In order to understand correctly the position of the parties, it becomes necessary to state the claims of title by which the plaintiffs respectively assert their rights of recovery against the defendants.

Samuel H. Blake of Bangor, who owned the lands embraced in these suits, conveyed the same to Caleb Wentworth, by warranty deed dated July 9, 1853, recorded January 6, 1854. Wentworth being in failing circumstances, and attempting to shield his property from creditors, executed a warranty deed of the property to Amasa Stetson, dated January 4, 1854, and recorded January 6, 1854. Amasa Stetson died in 1859, leaving a will, by which, after sundry pecuniary legacies to relatives, he bequeathed and devised the balance of his estate, both real and personal, to his wife, Abigail J. Stetson, and appointed her and Robert Fernald executors of his last will and testament. These executors by quit claim deed dated October 14, 1886, recorded November 3, 1886, released all the title or interest which Amasa Stetson had in the lands at the time of his decease, to C. A. Everett, the plaintiff in the first suit.

The deed from Wentworth to Stetson as appears from the evidence, was never delivered. It was made and sent to the register of deeds to be recorded, by the grantor without the knowledge of the grantee ; the grantee, when informed of the transaction repudiated it, and " said he would have nothing to do with it." Nor did he afterwards receive it from the registry, or in any manner ratify the transaction.

But in the view we have taken of the case this does not become material. The plaintiff, not only in the first suit but also in the second, claims title not through Amasa Stetson or his legal representatives alone, but through a different source.

Samuel H. Blake having conveyed to Caleb Wentworth, as we have before stated, by deed dated July 9, 1853, recorded January 6, 1854, John D. Prescott, a creditor of Wentworth, brought suit against him and attached his real estate, the attachment being made January 5, 1854,—one day before the record of Wentworth's deed to Stetson ; judgment was recovered June 14, 1855, and an extent made upon these lands July 12, 1855, the whole being set off to satisfy the judgment and costs of levy. August 12, 1856, the judgment creditor, John D. Prescott, conveyed the premises by warranty deed to Henry A. and James H. Burkett, the deed being recorded November

12, 1856. The Burketts, by warranty deed dated October 19, 1857, recorded October 24, 1857, conveyed the premises in question in both suits to Robert Thompson. Thompson died, and his heirs thereafter, on the 24th day of December, 1878, joined in a quit claim deed to Enoch P. Thompson, another heir, of all their "right, title and interest in and to any and all real estate and lands in Medford, county of Piscataquis," which they inherited from Robert Thompson. This deed was recorded July 2, 1880, and on the same day Enoch P. Thompson conveyed to C. A. Everett (plaintiff in the first suit) all his interest in the real estate which he acquired by inheritance from his father, Robert Thompson, and by deed from the other heirs. January 11, 1887, Everett, by warranty deed recorded the same day, conveyed to Frank Gilman, the plaintiff in the second suit, one half part in common and undivided of the lands embraced in these two suits.

Such is the plaintiff's claim of title in these suits.

Whatever claim the defendants have, by way of record title, is derived through and under the Prescott levy, and conveyance to the Burketts, and may be thus stated : James H. Burkett was owing Phillip Brown, and Brown attached the real estate of James H. Burkett, on the 8th day of November, 1856, (understood to be one half in common and undivided of the lands in question) recovered judgment October 26, 1857, and on the 19th day of November, 1857, extended his execution upon Burkett's undivided half of the real estate. Afterwards, on the 29th day of November, 1858, Phillip Brown, the judgment creditor, conveyed to these defendants by warranty deed, recorded December 2, 1858, the land set off on execution against James H. Burkett.

This attachment of Brown against Burkett was eleven months prior to the deed from the Burketts to Robert Thompson, and had it been valid, and followed by due proceedings, and the levy been valid, the plaintiffs might have met with difficulty in maintaining their actions, as to any title by way of the Stetson deed.

But the attachment upon the writ of Phillip Brown against

James H. Burkett was not valid. The writ, upon which the attachment was made, at the time of service contained a general money count only, without any specification of "the nature and amount" of the claim to be proved under it. An attachment of real estate on such a writ is void, and creates no lien thereon. R. S., c. 81, § 59; *Osgood* v. *Holyoke,* 48 Maine, 410; *Neally* v. *Judkins,* 48 Maine, 566; *Hanson* v. *Dow,* 51 Maine, 165; *Drew* v. *Alfred Bank,* 55 Maine, 450; *Briggs* v. *Hodgdon,* 78 Maine, 514. The levy was not made until after the deed from the Burketts to Thompson had been executed and recorded. Consequently, at the time the levy was made, the judgment debtor had no real estate upon which there was any lien by way of attachment, and that which was levied on had been conveyed away to others through whom the plaintiffs derive their title.

The deed from the two Burketts to Thompson of October 19, 1857, conveyed all that was set off to Prescott by his levy against Wentworth. That embraced all the land in controversy in both these suits. That passed, by the subseqent conveyances, to Everett who conveyed one half part in common and undivided to Gilman.

The plaintiffs, therefore, have the better title in themselves as against these defendants, and the entry must be in each suit,

*Judgment for demandants.*

PETERS, C. J., LIBBEY, EMERY and HASKELL, JJ., concurred.